UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSSANO REA,

        Plaintiff,

                         CASE NO. 2:09-CV-12611-DML-PJK
                         JUDGE DAVID M. LAWSON
                         MAGISTRATE JUDGE PAUL J. KOMIVES

   v.

WELLS FARGO HOME MORTGAGE, INC.;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; and HSBC BANK USA, N.A.;

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER
(Doc. Ent. 4)**

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     Plaintiff's Verified Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     C.     Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order
           pursuant to Fed. R. Civ. P. 65(a), (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     D.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.     Whether the Anti-Injunction Act precludes the Court from enjoining state
                foreclosure proceedings? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          2.     Whether a preliminary injunction effective during the pendency of the
                instant case compelling an extension of the redemption period is merited
                pursuant to Fed. R. Civ. P. 65(a)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          3.     Whether a temporary restraining order effective for ten (10) days
                following the entry of the proposed order compelling an extension of the
                redemption period until hearing on the requested preliminary injunction is
                merited pursuant to Fed. R. Civ. P. 65(b)? . . . . . . . . . . . . . . . . . . . . . . . 19

III.    NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.     **RECOMMENDATION:** The Court should deny plaintiff's motion for a preliminary

injunction and temporary restraining order (Doc. Ent. 4).

II.    **REPORT:**

A.     **Background**

On March 13, 2007, Rossano Rea entered into a note with MortgageIT, Inc. in the

amount of $228,000.00 with respect to the property located at 619 West Maplehurst Street,

Ferndale, Michigan 48220.  Doc. Ent. 1-2 at 23-44.[1]  Rea's monthly payment was in the amount

of $1,478.80.  Doc. Ent. 1-2 at 23.  Section 19 of the mortgage is titled, "Borrower's Right to

Reinstate After Acceleration."  Doc. Ent. 1-2 at 37-38.  Section 22 of the mortgage is titled,

"Acceleration; Remedies."  Doc. Ent. 1-2 at 39.

According to the September 18, 2008 monthly mortgage statement from ASC, Rea's

September 2008 payment was overdue.  Doc. Ent. 1-2 at 45. On or about October 21, 2008,

America's Servicing Company (ASC) wrote to Rea regarding his loan.  Doc. Ent. 1-2 at 46-47.

By a letter dated December 3, 2008, Orlans Associates PC (Orlans), ASC's representative,

informed Rea that ASC had elected to accelerate Rea's total indebtedness.  Doc. Ent. 1-2 at 48.

On December 5, 2008, a sheriff's sale was scheduled for January 6, 2009.  Doc. Ent. 1-2 at 49.

On December 17, 2008, attorney Curtis R. Willner wrote to Orlans on behalf of Rea.

Doc. Ent. 1-2 at 50.  On December 18, 2008, Orlans wrote to Rea, regarding his request for a

reinstatement amount.  Doc. Ent. 1-2 at 52.  On or about December 23, 2008, Willner wrote to

Orlans in response to the December 18, 2008 reinstatement quote.  Doc. Ent. 1-2 at 53-54.  On

---

[1]According to the complaint, plaintiff also entered into a promissory note/second secured
mortgage with MortgageIt, Inc. in the amount of $57,000.  Doc. Ent. 1-2 at 5 ¶ 13.  Plaintiff
claims that he "successfully renegotiated a second mortgage on the property and maintained
payments thereon current, to date, and has also maintained current all expenses and obligations
incident to home ownership, i.e., payment of all real property taxes."  Doc. Ent. 14 at 2.

January 2, 2009, Willner again wrote to Orlans, in part requesting that Orlans "adjourn the [January 6, 2009] Sheriff's sale to accommodate further discussion of this mortgage loan, and reinstatement terms."  Doc. Ent. 1-2 at 55.

On January 6, 2009, Willner wrote to Orlans to confirm that the Sheriff's sale had been adjourned to January 13, 2009.  Doc. Ent. 1-2 at 56-57.  On January 9, 2009, Willner again wrote to Orlans regarding, among other things, hardship and financial information.  Doc. Ent. 1-2 at 58-61.  On January 13, 2009, Willner wrote to Teisha Hinton at Orlans and attached an Excel file of the 2008 Income Statement for Rea's business, Bodymorph, Inc.  Doc. Ent. 1-2 at 62.

At some point, the Sheriff's Sale was adjourned to Tuesday, February 3, 2009.  Doc. Ent. 1-2 at 63; Doc. Ent. 1-2 at 11 ¶ 37.  On January 30, 2009, Willner wrote to Hinton at Orlans regarding items Willner wished to review.  Doc. Ent. 1-2 at 63-64.

In a letter dated February 3, 2009, ASC wrote to Rea seeking "additional financial information from [Rea] to determine what option is best suited for [Rea's] situation."  Doc. Ent. 1-2 at 65.  The Sheriff's Deed on Mortgage Foreclosure is also dated February 3, 2009.  Doc. Ent. 1-2 at 66-70.  The property was sold to HSBC for $105,000.  Doc. Ent. 1-2 at 76.

The following day, February 4, 2009, Willner again wrote to Hinton at Orlans following the failure to adjourn the Sheriff's sale.  Doc. Ent. 1-2 at 71-75.  Willner demanded that ASC voluntarily set aside the February 3, 2009 Sheriff's Sale and "reinstate the loan pursuant to terms we might negotiate."  Willner requested a reply to his demand no later than February 9, 2009.  Doc. Ent. 1-2 at 74.  On March 4, 2009, Orlans wrote to Rea, noting in part that the redemption period would expire on August 3, 2009.  Doc. Ent. 1-2 at 76.

On May 1, 2009, Willner wrote to Sherita Jones of ASC, noting in part that Willner had

3

not received the form concerning criteria ASC would use to approve reinstatement.  Doc. Ent. 1-2 at 77-78.  On May 7, 2009, Willner wrote to Jones, including a Profit & Loss Statement for Bodymorph, Inc., for the period January through March 2009.  Doc. Ent. 1-2 at 79.  On May 22, 2009, Willner wrote to Ms. Jones, enclosing Rea's Personal Financial Worksheet.  Doc. Ent. 1-2 at 80-82.

**B.**     **Plaintiff's Verified Complaint**

On or about June 17, 2009, plaintiff filed a verified complaint to set aside sheriff's sale and for other injunctive and monetary relief in Oakland County Circuit Court.  Doc. Ent. 1-2. Defendants are Wells Fargo Home Mortgage, Inc. d/b/a/ America's Servicing Company; HSBC Bank USA, N.A. and Mortgage Electronic Systems, Inc.  Doc. Ent. 1-2 at 3-4 ¶¶ 3-5.

Among other things, plaintiff alleges that "[t]he delay in processing the reinstatement requests, and preparing necessary agreements I clearly the error of Defendant Wells Fargo/ASC and/or its Attorneys."  Doc. Ent. 1-2 at 12 ¶ 43.  Plaintiff further alleges that "[t]he failure to adjourn the sale plainly forfeited Plaintiff's right to reinstate the Mortgage and Mortgage loan obligation."  Doc. Ent. 1-2 at 12 ¶ 44.  Furthermore, plaintiff alleges that HSBC's bid "was made in bad faith, and plainly derogates the customary practice of a foreclosing mortgagee to make a full credit bid, i.e., the amount of the outstanding debt owed on the Mortgage note, foreclosure expenses, and a per diem amount."  Doc. Ent. 1-2 at 13 ¶ 48.

The complaint contains allegations of (I) breach of contract and duty of good faith and fair dealing (¶¶ 54-76), in which plaintiff cites Sections 19 and 22 of the Mortgage at issue, and (II) promissory estoppel (¶¶ 77-83).  Doc. Ent. 1-2.  Each of the causes of action seeks entry of a preliminary injunction, a permanent injunction (including setting aside the Sheriff's sale), a

4

judgment and an order.  Doc. Ent. 1-2 at 17-18, 19-20.[2]

Defendants removed the case to this Court on July 2, 2009 pursuant to 28 U.S.C. § 1332.
Doc. Ent. 1 at 6 ¶ 5.  They filed an answer and affirmative defenses on July 7, 2009.  Doc. Ent. 3.

**C.      Plaintiff's Motion for a Preliminary Injunction and Temporary Restraining Order
         pursuant to Fed. R. Civ. P. 65(a), (b)**

Currently pending before the Court is plaintiff's July 17, 2009 motion for a preliminary
injunction and temporary restraining order pursuant to Fed. R. Civ. P. 65(a), (b).  Doc. Ent. 4.
Plaintiff claims that "[b]oth a [TRO] and Preliminary Inunction are merited and necessary for
Plaintiff to avoid forfeiture of his homestead.  The alternative relief requested is narrowly
tailored, and does not ask for the ultimate relief requested in [the] Complaint filed in this
matter."  Doc. Ent. 4 at 22.  Plaintiff "respectfully requests that this Court enter the Temporary
Restraining Order in the form submitted with the Motion captioned 'Proposed Temporary
Restraining Order.'  Further Plaintiff requests that the Court schedule this Motion for hearing on
the request for a Preliminary Injunction, pursuant to the Notice of Hearing submitted with this
Motion and Brief, and enter the Preliminary Injunction in the form submitted with the Motion
captioned 'Proposed Preliminary Injunction.'"  Doc. Ent. 4 at 2, 22.[3]  On June 18, 2009,
plaintiff's counsel submitted a proposed temporary restraining order via electronic mail.

On July 20, 2009, Judge Lawson entered an order of reference which referred the motion

---

[2]The record indicates that on June 23, 2009, Willner wrote to the Clerk of the Court of
Oakland County Circuit Court, regarding service upon Wells Fargo Home Mortgage, Inc., d/b/a
America's Servicing Company (Doc. Ent. 1-3 at 2-6).  Willner did the same on June 30, 2009
regarding service upon Mortgage Electronic Registration Systems, Inc. (Doc. Ent. 1-3 at 7-11)
and HBSC Bank USA, N.A. (Doc. Ent. 1-3 at 12-16).  Doc. Ent. 1-3 at 2-16.

[3]On the same day, plaintiff filed a notice and a demand for trial by jury.  Doc. Entries 6
and 7.

to me for a hearing and entry of a report and recommendation.  The order also set defendants'

deadline for a response for July 23, 2009 and required the parties to appear before me on July 28,

2009.  Doc. Ent. 8 at 1.[4]  On July 23, 2009, defendants filed a response.  Doc. Ent. 10.

On July 28, 2009, plaintiff and counsel for the parties appeared.  Although a hearing was

not held, counsel for the parties spoke with me in chambers.  In accordance with the agreement

reached during that discussion, I entered an order requiring plaintiff to file a reply on or before

the close of business on Friday, July 31, 2009.  My order further provided that no hearing would

be necessary and that I would enter a report and recommendation based upon the papers.

Finally, my order provided that the statutory redemption period would be tolled until August 17,

2009 or until further order of the Court.  Doc. Ent. 13.

On July 31, 2009, plaintiff filed a reply.  Doc. Ent. 14.  He claims to have brought the

instant motion "seeking relief (to extend or toll the statutory redemption period of six months)

far less intrusive than that prayed for in the Complaint (to set aside the Sheriff's sale), seeking

only to maintain the status quo."  Doc. Ent. 14 at 2.  Plaintiff requests that the Court "grant his

motion for a preliminary injunction extending or tolling the statutory redemption period during

the pendency of proceedings before this Court, in a form to be submitted and proposed by

Plaintiff."  Doc. Ent. 14 at 8-9.

**D.     Analysis**

**1.      Whether the Anti-Injunction Act precludes the Court from enjoining state
         foreclosure proceedings?**

---

[4]Judge Lawson's order also provided that the parties were to file certain materials for the
hearing by July 24, 2008.  Doc. Ent. 8 at 1-2.  Defendants filed a proposed exhibit list for the
hearing on July 24, 2009.  Doc. Ent. 11.  On July 27, 2009, plaintiff filed a witness list and
exhibit list for the hearing.  Doc. Ent. 12.

**a.**      The Anti-Injunction Act provides that "[a] court of the United States may not grant an

injunction to stay proceedings in a State court except as expressly authorized by Act of

Congress, or where necessary in aid of its jurisdiction,[5] or to protect or effectuate its

judgments."  28 U.S.C. § 2283 ("Stay of State court proceedings").  "It has been interpreted

consistently as an absolute bar to any federal court action that has the effect of staying a pending

state court proceedings unless that action falls within one of the Act's three specifically

designated exceptions."  *Phillips v. Charles Schreiner Bank*, 894 F.2d 127, 131-132 (5th Cir.

1990) (citing *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 630 (1977); *Mitchum v. Foster*,

407 U.S. 225, 228-229 (1972)) (internal footnotes omitted).

As defendant points out, "[o]nce the Anti-Injunction Act defense is raised, the party

pursuing the injunction bears the burden of establishing that the injunction falls within one of the

exceptions."  *Smith v. Encore Credit Corp.*, No. 4:08-cv-1462, 2008 WL 5169683, 7 (N.D. Ohio

Dec. 9, 2008).  *See also Honey v. Goodman*, 432 F.2d 333, 344 (6th Cir. 1970) ("if the Appellants

can bear the 'heavy burden' of showing that the State instituted the proceedings in bad faith and

with no real hope of ultimate success, in order to chill the free expression of unpopular ideas,

*Cox v. Louisiana*, 379 U.S. 536[] (1965), then the District Court must grant federal injunctive

---

[5]"Courts have applied th[e] second exception in only two scenarios: where the case is
removed from the state court, and where the federal court acquires in rem or quasi in rem
jurisdiction over a case involving real property before the state court does."  *Martingale LLC v.
City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004).  *See, i.e., Leavell v. Wells Fargo Bank, N.A.*,
No. 08-15278, 2009 WL 1439915 (E.D. Mich. May 19, 2009) (Cox, J.) ("Here, this case was
removed from a state court.  Assuming that this federal court acquired 'in rem or quasi in rem
jurisdiction' over this case, however, it is unclear whether it did so before the state district
court(s) acquired such jurisdiction.  Plaintiffs have not submitted any evidence to establish when
Defendants initiated foreclosure proceedings in state court.  Accordingly, Plaintiffs have not met
their burden of establishing that the requested injunction falls within one of the exceptions.").

relief.").

**b.**      In this case, determining whether the Anti-Injunction Act applies to this case turns on the

Court's interpretation of the phrase, "proceedings in a State court[.]"  "The phrase 'proceedings

in a state court' as used in the Anti-Injunction Act includes all steps taken, or which may be

taken, in a state court or by any of its officers, from the institution thereof to the close of final

process, whether civil or criminal in nature.  Such proceedings include, for example, the taking

of depositions, and the foreclosure of a mortgage."  19 Fed. Proc., L. Ed. § 47:103 (internal

footnotes omitted).  *See also Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 941-942 (6th Cir.

2002) ("[t]he Supreme Court has held that 'proceedings' for the purposes of the Act include 'all

steps taken or which may be taken in the state court or by its officers from the institution to the

close of the final process.'") (quoting *Hill v. Martin*, 296 U.S. 393, 403, 56 S.Ct. 278, 80 L.Ed.

293 (1935)); *Cragin v. Comerica Mortg. Co.*, No. 94-2246, 1995 WL 626292, 1 (6th Cir. Oct. 24,

1995) ("28 U.S.C. § 2283 generally precludes federal injunctions that would stay pending

foreclosure proceedings in the state courts.") (referencing *Phillips v. Chas. Schreiner Bank*, 894

F.2d 127, 131 (5th Cir.1990)).

          Therefore, defendant argues:

                   Plaintiff's motion improperly requests entry of an injunctive order
          extending the statutory redemption period and enjoining transfer of the property
          during the pendency of this action. This is precisely the type of request that §2283
          was intended to preclude. Plaintiff is plainly requesting that this Court enjoin
          continuation of the state foreclosure process which has already begun – as set
          forth in the sheriff's deed of record - and which concludes upon expiration of the
          statutory redemption period which will expire on August 3, 2008. Such
          extraordinary action is neither expressly authorized by Congress or necessary to
          aid the court's jurisdiction.  Moreover, the Court has not issued a judgment in this
          matter and, thus, there is no judgment to protect or effectuate.

Doc. Ent. 10 at 7-8.  According to defendants, "Plaintiff has not and cannot me[e]t his burden of

8

establishing that the requested injunction falls within one of the enumerated exceptions set forth in § 2283." Doc. Ent. 10 at 8.

On the other hand, plaintiff argues that "[t]he Anti-Injunction Act relied upon by defendants is inapplicable to foreclosure by advertisement, as such does not constitute a 'state court proceeding' within the meaning of the Act[.]" Doc. Ent. 14 at 2-5. Plaintiff contends that "[f]oreclosure by advertisement does not and should not constitute for purposes of the application of the Anti-Injunction Act, a State court proceeding, as a state court's jurisdiction has not been invoked, and there are no state court proceedings, no judge or jury, or due process of any semblance. Simply because a matter is administered pursuant to a state (Michigan) statute does not mean parties have invoked a state court's jurisdiction over that matter." Doc. Ent. 14 at 3.

Plaintiff encourages the Court to take a narrow interpretation of what constitutes a "State court proceeding" for purposes of the Anti-Injunction Act. Doc. Ent. 14 at 3. In so doing, plaintiff notes, "the Supreme Court has held that the Anti-Injunction Act only prohibits *pending* state court proceedings, and we have held that the Act does not prohibit injunctions against state administrative proceedings." *Tropf v. Fidelity Nat. Title Ins. Co.*, 289 F.3d 929, 942-943 (6th Cir. 2002) (emphasis added) (citing *American Motors Sales Corp. v. Runke*, 708 F.2d 202, 204 (6th Cir.1983) (state administrative proceedings)).

It is plaintiff's position that "if foreclosure by advertisement were a judicial proceeding, the instant action, whether filed in state or federal court, would not have been necessary, as relief would have been available in the very process or proceeding that was taking place. This is not a case of judicial foreclosure, but non-judicial foreclosure, and Defendants did not invoke the

jurisdiction of any state court in foreclosing, although they could have chosen to proceed with judicial foreclosure in a Michigan court of law."  Doc. Ent. 14 at 4.

Plaintiff cites two Michigan cases in support of his argument.  First, plaintiff notes that "foreclosure by advertisement is not a judicial action and does not involve state action for purposes of the Due Process Clause, but rather is based on contract between the mortgagor and the mortgagee."  *Cheff v. Edwards*, 203 Mich.App. 557, 560 (1994) (citing cases).  Second, plaintiff notes:

> In Michigan, foreclosure actions are equitable in nature. M.C.L. § 600.3180; M.S.A. § 27A.3180. However, foreclosure by advertisement, as was employed by the plaintiff in the case at bar, is not a judicial proceeding of any sort, *Northrip v. Federal National Mortgage Ass'n*, 527 F.2d 23 (C.A.6, 1975), and does not involve "state action" for purposes of the due process clause. U.S. Const., Am.XIV; *Cramer v. Metropolitan Savings & Loan Ass'n*, 401 Mich. 252, 259, 258 N.W.2d 20 (1977), cert. den. 436 U.S. 958, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978). The theory underlying Michigan's foreclosure by advertisement scheme is that the provisions of the foreclosure by advertisement statute, M.C.L. § 600.3201 et seq.; M.S.A. § 27A.3201 et seq., become a part of the contract between the mortgagor and the mortgagee. *Cramer v. Metropolitan Savings & Loan Ass'n*, *supra*, 401 Mich. p. 259, 258 N.W.2d 20; *Peterson v. Jacobs*, 303 Mich. 329, 335, 6 N.W.2d 533 (1942).

*Manufacturers Hanover Mortg. Corp. v. Snell*, 142 Mich.App. 548, 552-553, 370 N.W.2d 401, 403 (1985).

It is plaintiff's position that "since foreclosure by advertisement does not constitute a State court proceeding, the Anti-Injunction Act is wholly inapplicable[.]" Doc. Ent. 14 at 5.

**c.**    The Court should conclude that while the Anti-Injunction Act precludes this Court's enjoinment of a *state court or judicial* foreclosure proceeding, the Act does not preclude this Court's enjoinment of a non-judicial foreclosure, such as the foreclosure by advertisement at issue in this case.

10

As an initial matter, plaintiff's verified complaint to set aside Sheriff's Sale, & for other injunctive & monetary relief, was originally filed in state court.  Doc. Ent. 1-2 at 2.  Defendants removed the case to this Court on the basis of diversity jurisdiction.  Doc. Ent. 1 at 6.  Therefore, as plaintiff notes, "there is no longer a state court proceeding, as the original action in the Oakland County Circuit Court has been removed, and notice to that court to terminate proceedings upon removal has been given."  Doc. Ent. 14 at 3.

In any event, the Court should agree that this is a case of *non-judicial* foreclosure.  Doc. Ent. 14 at 4.  By way of illustration, in *Phillips*, "Texas law allow[ed] a mortgagee either to sell property in a non-judicial foreclosure pursuant to powers expressly granted in a deed of trust, Tex.Prop.Code § 51.002, or to bring a judicial foreclosure action."  *Phillips*, 894 F.2d at 129 n.1.

Likewise, Michigan provides for judicial and non-judicial foreclosure.  The foreclosure at issue in this case was a foreclosure by advertisement under Chapter 32, Mich. Comp. Laws §§ 600.3201-600.3285 ("Foreclosure of mortgages by advertisement").  *See*, *i.e.*, Doc. Ent. 1-2 at 69-70.  Within Chapter 32, it states that "[i]f a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, *the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure*.  If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply, the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31."  Mich. Comp. Laws § 600.3205c(8) (emphasis added).

11

By distinction, Chapter 31, Mich. Comp. Laws §§ 600.3101-600.3185, governs "Foreclosure of Mortgages and Land Contracts".  If a Chapter 32 proceeding may be converted into a judicial foreclosure under Chapter 31, then foreclosures conducted pursuant to Chapter 32, or foreclosure by advertisement, are non-judicial foreclosures.  The Anti-Injunction Act would preclude this Court from enjoining a Chapter 31 state foreclosure proceeding.  *See Foster v. Argent Mortg. Co. L.L.C.,* No. 07-11250, 2007 WL 2109558, 3 (E.D. Mich. Jul, 23 2007) (where bank had filed a foreclosure in state court, "[p]laintiff's motion for a stay of state court proceedings, pending review of the instant complaint, should be denied based upon the Anti-Injunction Act.") (Borman, J., accepting report and recommendation of Komives, M.J.).

To be sure, at least one court has stated that it "does not have the power to enjoin the state court mortgage foreclosure proceedings.  The Anti-Injunction Act, 28 U.S.C. § 2283, prohibits the granting of injunctions to stay state court proceedings, including mortgage foreclosure actions."  *Nixon v. Individual Head of St. Joseph Mortgage Co., Inc.*, 612 F. Supp. 253, 255 (N. D. Ind. 1985) (citing *Ungar v. Mandell*, 471 F.2d 1163 (2d Cir. 1972); *First National Bank & Trust Co. of Racine v. Village of Skokie*, 173 F.2d 1 (7th Cir. 1949)).[6]  *See also Phillips*, 894 F.2d at 131 ("[T]he Anti-Injunction Act, 28 U.S.C. § 2283, precludes any stay of the April 25 state court foreclosure proceedings, which were already pending when the district

---

[6]"Thus, this court is without jurisdiction to hear this cause, and lacks the power to order the injunctive relief sought.  The case will therefore be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3)."  *Id.*  "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3).

court issued its May 5 injunctive order.").[7]

However, the foreclosure by advertisement (Chapter 32), or non-judicial foreclosure proceeding, which took place in this case is not a "proceeding in a State court" for purposes of the Anti-Injunction Act.

**2.     Whether a preliminary injunction effective during the pendency of the instant case compelling an extension of the redemption period is merited pursuant to Fed. R. Civ. P. 65(a)?**

**a.**     Fed. R. Civ. 65(a), which governs preliminary injunctions, provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1).  It further provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial." Fed. R. Civ. P. 65(a)(2).

"There are four factors to be considered in determining whether the grant or denial of a preliminary injunction was an abuse of discretion: (a) the likelihood of success on the merits of the action, (b) the irreparable harm which could result without the relief requested, (c) the impact on the public interest, and (d) the possibility of substantial harm to others." *Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., Inc.*, 753 F.2d 1354, 1356 (6th Cir. 1985) (citing cases).  "Although these four factors must be considered in assessing a request for a preliminary injunction, the four factors do not establish a rigid and comprehensive test for determining the

---

[7]"[T]he district court cannot enjoin Schreiner Bank's prosecution of the April 25 state foreclosure action.  The district court is directed to vacate that portion of its order proscribing foreclosures and actions in other courts." *Id*. at 132.

13

appropriateness of preliminary injunctive relief. Instead, the district court must engage in a realistic appraisal of all the traditional factors weighed by a court of equity." *Christian Schmidt Brewing Co.*, 753 F.2d at 1356 (citing cases).

**b.**     In support of the first factor, plaintiff contends that "Wells Fargo/ASC patently breached the mortgage by publishing foreclosure notices, and scheduling a sale of the property, before according notice to Plaintiff of his right to reinstate, or entering into a reinstatement agreement, and consistently and disingenuously promising to reinstate, entering into negotiations for same, but never reducing to agreement, such reinstatement." Doc. Ent. 4 at 21.

As to the second factor, plaintiff contends that "there would be significant [irreparable] and immediate harm should the redemption period expire, and Plaintiff be defeased of and evicted from his home." Doc. Ent. 4 at 21.

As to the third factor, plaintiff contends that "[b]ecause this dispute involves private parties, there would be little or no impact on the public's interest, and indeed, enforcing contractual reinstatement rights would likely benefit the public interest ensuring integrity in the foreclosure process." Doc. Ent. 4 at 21.

Finally, with respect to the fourth factor, plaintiff claims that, "[s]hould injunctive relief be granted, particularly the lesser relief requested, i.e., extension of the redemption period, there would be little harm to others, and notably to [HBSC], the Mortgage account owner, particularly given its very low bid at the Sheriff's sale. Because this is the mortgagee's bid, Michigan law would likely not allow that Defendant's pursuit of a deficiency on the loan account." Doc. Ent. 4 at 21.

Plaintiff claims that a preliminary injunction is merited under Fed. R. Civ. P. 65(a)'s

14

standards, "particularly if [the] more tailored interim relief requested is granted." Doc. Ent. 4 at 22.

**c.**       Defendants argue that plaintiff has not satisfied "his burden of proving that injunctive relief is proper[.]" Doc. Ent. 10 at 8-13. "A preliminary injunction is an extraordinary remedy that should only be granted if the movant carries its burden of proving that the circumstances clearly demand it." *Donaldson v. United States*, 109 Fed.Appx. 37, 41 (6th Cir. 2004) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir.2000)).

As to the first factor, defendants contend that "Plaintiff's breach of contract and promissory estoppel claims are barred under the statute of frauds." To begin, defendants contend that "Plaintiff's assertion that HSBC and/or Wells Fargo were precluded from proceeding with the foreclosure sale in the face of Plaintiff's admitted inability to reinstate the mortgage and in the absence of a signed, written agreement by Defendants to further forbear from exercise of the remedies expressly provided for within the mortgage is without merit." Doc. Ent. 10 at 9.

Citing Mich. Comp. Laws § 566.132(2)[8] and *Crown Technology Park v. D & N Bank*,

---

[8]Mich. Comp. Laws § 566.132 governs "[a]greements, contracts, or promises for which signed writing required; enforcement[.]" Subsection 2 provides:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a) A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.

15

242 Mich. App. 538, 551; 619 N.W.2d 66, 72 (2000),[9] defendants claim "[i]t is well-established law that the agreement of the parties with regard to the obligations which are the subject of this action is strictly limited to the terms of the applicable documents (i.e. the note and mortgage)[.]" Doc. Ent. 10 at 9-10.

Defendants argue that Mich. Comp. Laws § 566.132(2) "bars any action that Plaintiff may seek to bring based on the allegations set forth in the Complaint." Doc. Ent. 10 at 10. Relying upon *Crown Technology Park* and Section 566.132, it is defendants' opinion that:

> . . . absent the existence of an agreement signed by an authorized representative of HSBC and/or Wells Fargo confirming a modification of the terms of the note and/or mortgage or other financial accommodations, Plaintiff was obligated to pay the amounts due and owing under the mortgage upon his default. There being no such agreement, HSBC and Wells Fargo were under no legal obligation to forbear from exercising the rights and remedies provided for in the mortgage, including, without limitation, foreclosure by advertisement.
>
> The subject matter of all of the alleged discussions between the parties and their counsel regarding reinstatement and/or modification of Plaintiff's mortgage falls squarely within the express language of MCL §566.132(2)(b) and (c).

Doc. Ent. 10 at 11.

As to the second factor, defendants argue that plaintiff has not established irreparable harm. Doc. Ent. 10 at 11-12. In so doing, they note:

> Basically, the concept of irreparable injury turns upon the inadequacy of

---

> (c) A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

Mich. Comp. Laws § 566.132(2).

[9]"[T]he Legislature used the broadest possible language in M.C.L. § 566.132(2); MSA 26.922(2) to protect financial institutions by not specifying the types of 'actions' it prohibits, eliminating the possibility of creative pleading to avoid the ban." *Crown Technology Park*, 242 Mich. App. at 551, 619 N.W.2d at 72.

compensatory damages. Thus, mere loss of profits, or relative deterioration of competitive position, do not in themselves suffice. The moving party must demonstrate a noncompensable injury, for which there is no legal measure of damages, or none that can be determined with a sufficient degree of certainty. The injury must be both certain and great; it must be actual, and not merely theoretical.

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. E. F. Hutton & Co., Inc.*, 403 F.Supp. 336, 343

(E.D. Mich. 1975) (Pratt, J.) (internal citations omitted). Defendants contend that plaintiff seeks

to avoid default, acceleration and the sheriff's sale - events which "have already come to pass."

It is defendants' position that "[t]o the extent Plaintiff was not and is still unable to tender the

necessary funds to keep his home, it certainly cannot be said that such harm has been caused by

Defendants['] actions or that Plaintiff's personal hardship warrants the imposition of an

injunction." Doc. Ent. 10 at 12.

Defendants also argue that plaintiff has not established that "the balance of equities

weighs in favor of an injunction[.]" Doc. Ent. 10 at 12-13. Specifically, defendants argue that

"Plaintiff's motion offers no justification for the relief sought, other than to appeal to the Court's

sympathy and suggest that Defendants' exercise of their contractual and statutory rights to

recover the loan balance will cause the Plaintiff hardship. This plainly is not enough to enjoin

Defendants from exercising their legal rights to recover the collateral securing Plaintiff's loan."

Doc. Ent. 10 at 12-13.

Finally, defendants argue that plaintiff has not established that "the public interest will be

served by the requested injunction[.]" Doc. Ent. 10 at 13. It is defendants' position that "this

action involves nothing more than an attempt by Plaintiff to delay the conclusion of foreclosure

proceedings that fully comport with applicable state law." Defendants contend that "[p]laintiff

has offered nothing to establish that the interest of Michigan's residents would best be served

17

through judicial interference with mortgage lenders who have done nothing wrong[;]" and "this Court could deal a serious blow to the mortgage loan market in Michigan should contractual certainty be lost through arbitrary enforcement of otherwise legal and enforceable loan provisions and remedies."

**d.**      Plaintiff replies that "[m]onetary damages are not available to plaintiff, and he will suffer irreparable harm if he loses his home in the foreclosure proceedings." Doc. Ent. 14 at 5-7. According to plaintiff, defendants' argument regarding the availability of monetary damages "utterly disregards the realities in this case, and indeed in any foreclosure wrongfully undertaken." Doc. Ent. 14 at 5. Given that plaintiff's complaint seeks injunctive relief, plaintiff notes "[t]here will likely not be monetary damages for Plaintiff, except for those compensating him for dispossession from, and defeasance of, his homestead." Plaintiff notes there is "very little equity in his home[,]" and "his loss is not one primarily of equity that would be compensable as money damages, but the loss of a homestead and a place to repose." Doc. Ent. 14 at 6. Referencing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. E. F. Hutton & Co., Inc.*, 403 F.Supp. 336, 343 (E.D. Mich. 1975) ("The injury must be both certain and great; it must be actual, and not merely theoretical.") (Pratt, J.), plaintiff contends that "the threat of losing his home through the expiration of the redemption period is both certain and great." Doc. Ent. 14 at 6. Citing *In re Delorean Motor Co.*, No. 88-1275, 1989 WL 63256 (6th Cir. June 14, 1989),[10]

---

[10]In this case, the Sixth Circuit affirmed an "order of district judge George Woods, which preliminarily enjoined appellants herein from taking action to evict defendant-appellee John Z. DeLorean (DeLorean) from his apartment in New York City or otherwise interfering with the district court's jurisdiction over the shares of stock and proprietary lease reflecting DeLorean's ownership and possessory interest in the apartment." *In re Delorean Motor Co.*, 1989 WL 63256, *1 (Internal footnote omitted).

18

plaintiff contends that "continued possession and ownership by Plaintiff would avert very substantial and looming consequences for him, but pose little harm to Defendants' interests while awaiting a determination of the merits of Plaintiff's claims."  Doc. Ent. 14 at 6.  Plaintiff notes that the default and acceleration are not "done deals[;]" "[T]hese are the very events that [plaintiff] seeks to set aside in this action."  Doc. Ent. 14 at 6-7.  Plaintiff explains that neither the default nor the acceleration will dispossess him or divest him of his homestead; rather, "the running of the six-month statutory redemption period will."  Therefore, he argues, injunctive relief is appropriate at this time.  Doc. Ent. 14 at 7.

Plaintiff also argues that "[d]efendants' breaches o[f] the mortgage are manifest, and therefore plaintiff's likelihood to succeed on the merits is strong."  Doc. Ent. 14 at 7-8.  Within this argument, plaintiff explains that he "does not seek, at least in whole part, to enforce promises made by any Defendant following the acceleration of the outstanding amount of the loan, and foreclosure."  Plaintiff specifically mentions the reinstatement provision (Section 19 ("Borrower's Right to Reinstate After Acceleration.")) and the cure provision (Section 22 ("Acceleration; Remedies.")) of the Mortgage.  Plaintiff claims he invoked his right to reinstatement.  He contends that defendant Wells Fargo/ASC "did not accord [him] any time pursuant to the Mortgage to cure default following acceleration." Doc. Ent. 14 at 7.  Also, plaintiff claims he "was never accorded a thirty-day cure period prior to the notice of acceleration on December 3, 2008[.]" Doc. Ent. 14 at 7-8.  Plaintiff also claims he was never accorded his right to a "reasonable period of time to reinstate the accelerated Mortgage

19

obligation."[11]   According to plaintiff, he "never had an effective opportunity to cure and to reinstate prior to commencement of foreclosure, and Defendants manifestly breached the Mortgage."  Doc. Ent. 14 at 8.

Finally, plaintiff argues that "[t]he public interest would clearly be served by issuance of the requested injunction."  Specifically, plaintiff argues that "because at least one Defendant breached the Mortgage . . . not to set aside the Sheriff's sale, and indeed, less restrictively, to extend the redemption period, would not serve the public interest by undermining contractual certainty."  Doc. Ent. 14 at 8.

**e.**      The Court should conclude that the factors weigh in favor of denying plaintiff's request for a preliminary injunction.  This is not to say that plaintiff's arguments should be taken lightly.  However, having considered the foregoing arguments of the parties, the Court should conclude that defendants' are the stronger arguments.  *See*, *i.e.*, *Leavell*, 2009 WL 1439915 at *4 ("Defendants assert that Plaintiffs cannot establish a strong likelihood of success on the merits for several reasons, including that Plaintiffs' legal and equitable claims are barred under the applicable statutes of limitations, the doctrine of laches and the TILA's statutory provisions. The Court agrees."), *8 ("Plaintiffs have not established a strong likelihood of success on the merits. The Court therefore concludes that Plaintiffs have not established that they are entitled to a preliminary injunction."); *Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortgage Capital, Inc.*, 274 F.3d 1085, 1097 (6th Cir. 2001) ("the contract grants Defendants the

---

[11]Plaintiff contends that the "foreclosure had begun even before the December 3rd notice of acceleration, and certainly before any reinstatement quote (provided by Defendant Wells Fargo's Attorneys on December 18, 2008[)], as the first foreclosure insertion in the *Oakland County Legal News*, is dated December 5, 2008 . . . and was almost certainly ordered prior to that date with that publication."  Doc. Ent. 14 at 8.

discretionary authority to reduce the principal amount of the loan. Because we have concluded

that summary judgment on Plaintiff's breach of contract claim was warranted, and because "the

proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the

proof required to survive a summary judgment motion," *Leary v. Daeschner*, 228 F.3d 729, 739

(6th Cir.2000), we conclude Plaintiff has failed to show any likelihood of success on the merits

and an injunction of the foreclosure was not necessary.").[12]

3.      **Whether a temporary restraining order effective for ten (10) days following the
        entry of the proposed order compelling an extension of the redemption period until
        hearing on the requested preliminary injunction is merited pursuant to Fed. R. Civ.
        P. 65(b)?**

        Plaintiff argues that a TRO is merited under Fed. R. Civ. P. 65(b)'s standards.  Doc. Ent.

4 at 18-20.  Fed. R. Civ. P. 65(b), which governs temporary restraining orders, provides:

        (b) Temporary Restraining Order.

---

        [12]"An examination of the other preliminary injunction factors confirms this conclusion.
Although Plaintiff would sustain irreparable injury through a foreclosure in terms of losing
unique real property, enjoining the foreclosure would also have a deleterious effect on
Defendants, who would have to delay any sale of the property in an uncertain economy and
continue to rely on the funds in the Cash Trap for the mall's operating expenses. Plaintiff also
predicts dramatic harm to mall tenants in the event of a mortgage foreclosure. Plaintiff's concern
for an abrupt mass eviction of mall tenants is, however, somewhat belied by Defendants' concern
for the financial ramifications of delaying the foreclosure and three tenants' vacation of the
property. Finally, Plaintiff and Defendants offer sound policy reasons in support of and in
opposition to enjoining the foreclosure. Plaintiff suggests that public policy seeks to protect
consumers from wrongful foreclosures on property, and that the public interest favors the
integrity of securities markets. Allowing Defendants to take a position contrary to the
representations of the offering circular could, Plaintiff argues, contravene the public interest in
the securities markets. Defendants contend that public policy favors the enforcement of contracts
according to their terms. Defendants further contend that enjoining foreclosure would destabilize
faith in mortgage notes creating security interests in real estate financing. We agree with the
district court that all of these policy arguments are valid and strong, and that, overall, the
arguments favor neither Plaintiff nor Defendants." *Wonderland Shopping Center Venture Ltd.
Partnership*, 274 F.3d at 1097-1098.

(1) Issuing Without Notice. The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

(2) Contents; Expiration. Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record. The order expires at the time after entry--not to exceed 10 days--that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record.

(3) Expediting the Preliminary-Injunction Hearing. If the order is issued without notice, the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceed with the motion; if the party does not, the court must dissolve the order.

(4) Motion to Dissolve. On 2 days' notice to the party who obtained the order without notice--or on shorter notice set by the court--the adverse party may appear and move to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

Fed. R. Civ. P. 65(b) (effective until 12/01/2009).

The July 18, 2009 proposed TRO states, "[t]here is good cause to believe that the actions of Defendants have wrongfully cut off Plaintiff's right to reinstatement of the March 13, 2007 Note and Mortgage, in breach of those agreements, and that the Sheriff's sale of February 3, 2009 should be set aside." Among its provisions is a requirement that defendants be "temporarily retrained and enjoined from further foreclosure of the Plaintiff's premises, . . . and from further enforcement of the March 13, 2007 Note and Mortgage[.]"

22

In addition to reiterating his request that the Court set aside the Sheriff's sale, plaintiff seeks a TRO "enjoining the foreclosure process, a transfer of legal ownership and possession to [HSBC] upon expiration of the reception period." Doc. Ent. 4 at 18-19. Plaintiff explains that he "would accept an interim remedy more narrowly tailored, and of less impact to Defendants than the ultimate remedy prayed for — such as an Order of Injunction extending the redemption period until this matter can be fully litigated." Citing *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1168 (6th Cir. 1983) (observing that "Circuit Judge Boyce F. Martin, sitting as District Judge by designation, issued a temporary restraining order so as to preserve the status quo pending a comprehensive review of the issues."), plaintiff claims that he "primarily seeks to maintain the status quo during proceedings in this matter." Doc. Ent. 4 at 19.

With respect to Fed. R. Civ. P. 65(b)(1)(A), plaintiff refers to his verified complaint, noting in part that the "immediate irreparable injury" would namely be "the loss of his homestead and right of possession therein." Doc. Ent. 4 at 19. Plaintiff further argues that potential money damages "simply will not provide Plaintiff with a domicile or homestead, after Judgment in this matter and during the pendency of proceedings." Doc. Ent. 4 at 19-20.

With respect to Fed. R. Civ. P. 65(b)(1)(B), plaintiff refers to his attorney's July 17, 2009 certification concerning notice to defendants' attorney of plaintiff's motion for a TRO and preliminary injunction (Doc. Ent. 4 at 24). Plaintiff claims that defendants "have declined or failed to concur with the undersigned regarding a stipulation to set aside the Sheriff's sale or alternatively, to extend the redemption period." Plaintiff claims that representatives of defendant Wells Fargo/ASC misled plaintiff both before and after the Sheriff's sale. Doc. Ent. 4 at 20.

Nonetheless, if the Court agrees with my foregoing conclusion that a preliminary injunction is not merited here, then the Court need not determine whether a TRO "effective until the matter may be heard on the included Motion for a Preliminary Injunction can be done, to enjoin transfer of the home by the Sheriff's Deed is merited, given the looming August 3rd expiration of the redemption period."  Doc. Ent. 4 at 20.

III.     **NOTICE TO PARTIES REGARDING OBJECTIONS**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address

specifically, and in the same order raised, each issue contained within the objections.


                                           s/Paul J. Komives<u>                           </u>
                                           PAUL J. KOMIVES
                                           UNITED STATES MAGISTRATE JUDGE


Dated: <u>August 7, 2009</u>



I certify that a copy of the foregoing document was sent to all parties and/or counsel of record via electronic and/or U.S. Mail.


                                           s/Eddrey Butts<u>                           </u>
                                           Case Manager